UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

MATTHEW AND MEAGAN HOWLAND                                CASE NO. 12-51251

DEBTORS

PHAEDRA SPRADLIN, TRUSTEE                                       PLAINTIFF

V.                                                            ADV. NO. 14-5019

BEADS AND STEEDS INNS, LLC                                      DEFENDANT


MEMORANDUM OPINION

This matter is before the Bankruptcy Court on the Defendant Beads and Steeds, LLC's Motion for Judgment on the Pleadings [Doc. 9]. The Plaintiff Trustee filed her Objection [Doc. 11] and the Defendant filed its response [Doc. 13]. On July 24, 2014, the Bankruptcy Court heard oral argument and took the matter under submission. It is now ripe for determination.

The issue is whether the Trustee failed to state a claim upon which relief may be granted pursuant to 11 U.S.C. § 548(a)(1)(B) and K.R.S. § 378.020 through 11 U.S.C. § 544(b). The resolution of this issue turns on whether the Trustee can prove that the Debtors made a transfer of their interest in property by utilizing a "reverse veil piercing" theory that would allow the Trustee to treat the Debtors and their wholly owned limited liability company as the same. Because Kentucky has not adopted reverse veil piercing, the Trustee may not proceed under the theory and the Trustee's Complaint fails to state a claim. But resolution of the Motion is premature as the Trustee has moved to amend the Complaint and the Defendant deserves an opportunity to oppose this relief.

1

I.      **FACTS.**

The following facts alleged in the Trustee's Complaint are taken as true for the purpose of this decision.  On or about June 19, 2007, the Debtors formed Meadow Lake Horse Park, LLC ("Meadow Lake").  On July 20, 2007, Meadow Lake purchased 133 acres of real estate in Garrard County known as 9863 Lexington Road, Lancaster, Kentucky ("Farm") for $1,600,000.00 with the proceeds of a mortgage loan from United Bank and Trust Company ("United Bank").  In late November 2010, the Debtors made a $760,000.00 payment on the mortgage loan to United Bank out of their personal income tax returns.  The Trustee asserts this payment was without consideration.

On December 28, 2010, Meadow Lake sold the farm for $800,000.00 to the Defendant Beads and Steeds, LLC, which is wholly owned by Robert and Susan Hale ("2010 Transfer"). The Defendant was formed shortly before the 2010 Transfer for the sole purpose of purchasing the Farm.  The Defendant financed the full purchase price with a mortgage loan from United Bank in the amount of $800,000.00.

Subsequent to the sale of the Farm, Meadow Lake leased the Farm to the Defendant for $1,000.00 per month.  Meadow Lake also agreed to pay all insurance and real property taxes. The Debtors operated the Farm as a horse boarding and training facility and a bed and breakfast and event facility both before and after the 2010 Transfer.

The Debtors filed chapter 7 bankruptcy on May 8, 2012.  The Debtors scheduled their interest in Meadow Lake on Schedule B and listed the value as $0.  Phaedra Spradlin was appointed Chapter 7 Trustee.

On May 6, 2014, the Trustee filed the underlying adversary proceeding seeking to avoid the 2010 Transfer as a fraudulent conveyance pursuant to § 548(a)(1)(B). The Trustee also seeks to avoid the 2010 Transfer pursuant to K.R.S. § 378.020 through § 544(b). The Trustee further requests that the Bankruptcy Court disallow any claims by the Defendant pursuant to § 502(d).

The Defendant answered the Complaint [Doc. 8] generally denying the allegations. The Defendant has now moved for judgment on the pleadings for failure to state a claim upon which relief may be granted because the Trustee has only alleged a transfer by Meadow Lake, not the Debtors [Doc. 9].

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS.

The Defendant moved for judgment on the pleadings pursuant to FED. R. BANKR. P. 7012, which incorporates FED. R. CIV. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-582 (6th Cir. 2007). While a court does not have to accept the truth of legal conclusions or unwarranted factual inferences, a court must otherwise treat the opposing party's well-pled material allegations in the pleadings as true. *Id*.

## III. ANALYSIS.

### A. The Trustee Relies on a "Reverse Veil Piercing" Theory to Meet Her Burden of Proof.

The crux of the Defendant's Motion is its argument that the Trustee fails to allege that the Debtors participated in the 2010 Transfer as required by § 548(a)(1)(B), § 544(b) and K.R.S. § 378.020.[1]  *See* 11 U.S.C. § 548(a)(1) ( "transfer… of an interest of the debtor in property…");

---

[1] The Defendant makes additional assertions that the Trustee's allegations do not support a federal or state fraudulent transfer cause of action. For example, the Defendant argues the Complaint does not sufficiently allege

3

§ 544(b)(1) ("transfer of an interest of the debtor in property"); K.R.S. § 378.020 ("transfer…made by a debtor…"). The Trustee counters that she has alleged facts that would support her causes of action under a reverse veil piercing theory. She argues that there is a unity of interest and ownership between the Debtors and Meadow Lake such that the identities of the Debtors and Meadow Lake were not, and are not, separate. The Trustee contends that if the Bankruptcy Court finds that the Debtors and Meadow Lake are one and the same under a reverse veil piercing theory, then she has demonstrated that her right to relief rises above the speculative level and she has given the Defendant fair notice of her causes of action.

### 1. **Reverse Veil Piercing is Characterized Two Ways.**

Courts characterize reverse veil piercing two different ways. "Outsider" reverse veil piercing involves a third party creditor piercing the corporate veil in the reverse to reach the assets of the corporation to satisfy the debt of a corporate insider. *Grimmett v. McCloskey (In re Wardle)*, No. NV-05-1000-KMoB, 2006 Bankr. LEXIS 4817, *16-17 n.4 (9th Cir. B.A.P. Jan. 31, 2006). "Insider" reverse veil piercing involves an insider of the corporation seeking to disregard the corporate form of his own corporation for his own benefit. *Id. See also Halverson, et al., v. Schuster (In re Schuster)*, 132 B.R. 604, 607 (Bankr. D. Minn. 1991). It is not clear under which theory the Trustee proceeds.

The Trustee is in a unique position. As Trustee of the Debtors' bankruptcy estate, she stands in the shoes of the Debtors and assumes causes of actions that belong to the Debtors. *Butner v. United States*, 440 U.S. 48 (1979) (holding a bankruptcy estate's rights and assets are determined by state law and not by federal rule of equity). Thus, if state law allows the Debtors to pierce the veil of their limited liability company pursuant to an "insider" reverse veil piercing

---

the lack of reasonably equivalent value or insolvency. The allegations in the Complaint are sufficient to overcome these additional arguments.

theory, then the Trustee may pursue that remedy. A trustee in bankruptcy may also assert causes of action that belong to the bankruptcy estate, *i.e.*, fraudulent transfer claims pursuant to § 548 and § 544. Therefore, she may use the powers provided to her by the Bankruptcy Code to obtain the relief provided by these statutory provisions. *See, generally,* 11 U.S.C. § 548; 11 U.S.C. § 544. Further, by virtue of § 544, the Trustee also stands in the shoes of the Debtors' judgment creditors. Thus, if state law allows the Debtors' judgment creditors to pierce the veil of the Debtors' limited liability company pursuant to an "outsider" reverse veil piercing theory, then the Trustee may utilize that theory as well. *See, generally,* 11 U.S.C. § 544.

Ultimately, it is not necessary to resolve whether the Trustee seeks to pierce the veil of Meadow Lake pursuant to an "insider" or "outsider" reverse veil piercing theory as this decision is the same under either theory.

## 2.    Kentucky Has Not Adopted or Rejected Reverse Veil Piercing.

Kentucky courts have not accepted or rejected the reverse veil piercing doctrine. *See Turner v. Andrew*, 413 S.W.3d 272, 277 n. 4 (Ky. 2013); *see also Williams v. Oates*, No. 2012-CA-000327-MR, 2014 WL 2937773 (Ky. App. June 27, 2014). In *Turner*, the Kentucky Supreme Court recognized in dicta that a limited number of jurisdictions have adopted insider reverse veil piercing based on strong public policy considerations. *Turner*, 413 S.W.3d at 277. The Supreme Court also mentioned that at least one commentator does not believe that Kentucky would recognize reverse veil piercing. *Id. at* 277 n. 4. But, the Supreme Court did not adopt or reject the theory.

The Kentucky Court of Appeals later acknowledged the discussion of veil piercing in *Turner*, but like the Kentucky Supreme Court, failed to rule for or against the doctrine. *Williams*,

5

2014 WL 2937773 at *4. The Court of Appeals also noted that there is "speculation that Kentucky would probably not recognize reverse veil piercing." *Id.*

### 3. Current Kentucky Law Does Not Support Adopting the Trustee's Theory of Reverse Veil Piercing.

The Trustee contends that, although Kentucky courts have not explicitly adopted reverse veil piercing, Kentucky would adopt the theory based on its acceptance of the traditional veil piercing remedy. *See* Trustee's Response [Doc. 11] at 7. Even if this statement is true, the Trustee may not use reverse veil piercing to avoid judgment on the pleadings.

#### i. Traditional Veil Piercing is Available as an Equitable Remedy in Kentucky.

In Kentucky, traditional veil piercing[2] is an equitable remedy that allows a court to impose personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts. *See Inter-tel Tech., Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012) ("Piercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation."); *White v. Winchester Land Development Corp.*, 584 S.W.2d 56, 61 (Ky. App. 1979) ("Three basic 'theories' have been utilized to hold the shareholders of a corporation responsible for corporate liabilities."). Piercing the corporate veil is not treated as a separate cause of action. *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 211 (Ky. App. 2009) (*citing* William Meade Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, § 41.29 (2006)).

---

[2] The Defendant argues that veil piercing is limited to corporations and does not apply to limited liability companies. *See, e.g., Pannell v. Shannon*, 425 S.W.3d 58, 75 n. 15 (Ky. 2014). This argument is not persuasive. *Turner*, 413 S.W.3d at 277 ("The doctrine [of veil piercing] can apply to limited liability companies."); *see also Tayloe v. Sellco Two Corp.*, No. 2012-CA-001445-MR, 2014 WL 3674252, at *4 (Ky. App. July 25, 2014) ("We agree…that Kentucky law does not distinguish between corporations and LLCs when discussing liability or piercing the corporate veil.").

6

Kentucky courts pierce the corporate veil sparingly and only where it is necessary to prevent injustice. *Schultz v. General Electric Healthcare Financial Services, Inc.*, 360 S.W.3d 171, 174 (Ky. 2012) (*citing Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)). To successfully pierce the corporate veil, a plaintiff must prove "a loss of separate entity existence" and an injustice "beyond the mere inability to collect a debt from the corporation." *Inter-tel Tech.*, 360 S.W.3d at 164-165. Proof of actual fraud is not required. *Id.*

The result of piercing the veil in Kentucky is that "the limited liability which is the hallmark of a corporation is disregarded and the debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence." *Id. at* 155. The remedy allows an injured party, who has prevailed in establishing a corporation owes it a debt, to reach beyond the corporate form to collect the debt from the shareholders, officers or directors.

### ii.  Kentucky Courts Might Accept Reverse Veil Piercing as an Equitable Remedy.

Kentucky has adopted traditional veil piercing, so it is not unreasonable to conclude that Kentucky may ultimately adopt reverse veil piercing in the right circumstances. Kentucky courts have historically shown a willingness to overlook the general rule of limited liability for equitable reasons:

> This court in harmony with the trend of thought and opinion in recent years has not hesitated to make an exception to the general rule when necessary to circumvent fraud, but has looked beyond the form or shadow of the pretended corporation to those in whose individual interest it was organized and is operated.

*Lowry Watkins Mfg. Co. v. Turley-Bullington Mortgage Co.*, 58 S.W.2d 591, 592 (Ky. 1933). It is therefore possible to conclude that a Kentucky court would apply reverse veil piercing when necessary to prevent fraud, illegality, or injustice. *See Inter-Tel Tech.*, 360 S.W.2d at 168

7

("Courts should not pierce corporate veils lightly but neither should they hesitate in those cases where the circumstances are extreme enough to justify disregard of an allegedly separate corporate entity.")

This possibility is not assured, however. *See supra* at Section III.A.2 (discussing Kentucky cases that have discussed, but not decided, the issue and some speculation Kentucky would not adopt reverse veil piercing). Further, it is likely Kentucky courts would more readily accept outsider reverse veil piercing than insider reverse veil piercing. *See Turner*, 413 S.W.3d at 277 ("There is an 'insider reverse' piercing theory, adopted by a very few states, but it is employed in that rare instance where equity is perceived to require disregard of the entity."); s*ee also Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir. 1979) (declining to allow a corporate entity to use veil piercing to undo what the entity itself created); *Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Pros. Co.)*, 102 F.3d 223 (6th Cir. 1996) (holding a subsidiary does not have standing to raise an alter ego claim against its parent as veil piercing is only for the benefit of third parties).

But the Trustee cannot prevail even if this Court is willing to decide that Kentucky courts will accept either form of reverse veil piercing. This Court could only predict use of reverse veil piercing as a remedy; not as a basis for an independent cause of action.

### iii. The Trustee's Reverse Veil Piercing Theory is Not Consistent with Kentucky's Treatment of Veil Piercing as a Remedy.

Kentucky's approach to traditional veil piercing is as a remedy, rather than a cause of action in its own right. The "doctrine of piercing the corporate veil is recognized as being an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability." *Daniels*, 300 S.W.3d at 211; *see also Hodak v. Madison Capital Management, LLC*,

8

348 Fed. Appx. 83, 94-95 (6th Cir. 2009).[3]  But the Trustee needs more from reverse veil piercing than merely the right to pursue Meadow Lake's assets.  The Trustee needs to consolidate the Debtors and Meadow Lake to pursue the federal and state fraudulent conveyance claims in the Complaint.

The Trustee argues that disregard of the corporate form of Meadow Lake would mean the 2010 Transfer is treated as if it were made by the Debtors directly.  *See* Trustee's Response [Doc. 11], at 6.  Under this theory, it does not matter whether the Debtors or Meadow Lake committed the alleged wrongdoing.  The assets and liabilities of both parties are treated as merged both prospectively and retroactively.  This logic is not consistent with veil piercing as a remedy in Kentucky.

Only two Kentucky cases were found that might suggest Kentucky courts would treat veil piercing as a way to consolidate separate entities like the Debtor and Meadow Lake, either prospectively or retroactively.  *See Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974) ("Generally a corporation will be looked upon as a separate legal entity but when the idea of separate legal entity is used to justify wrong, protect fraud or defend crime the law will regard the corporation as an association of persons."); *Louisville & N.R. Co. v. Carter*, 226 Ky. 561, 10 S.W.2d 1064, 1068 (Ky. 1927) (piercing results in recognition of the shareholders and company as "united in one body.").  The language in these cases is not enough to justify adoption of reverse veil piercing in the manner proposed by this Trustee.

Both cases were decided well before the seminal case of *White v. Winchester Land Development Corp.*  Kentucky courts have since had many opportunities to address veil piercing, most recently in *Inter-tel Tech.*, and the Kentucky Supreme Court continues to treat veil piercing

---

[3] A movant may seek to pierce the veil as part of the initial complaint or after a judgment has been obtained and the movant discovers that the corporate shield may be vulnerable.  This difference only affects the procedure of obtaining the relief and not the nature of the remedy.  *See Inter-tel Tech., Inc.*, 360 S.W.3d at 168-169.

9

as an equitable remedy that allows a creditor of the corporation to recover the corporate debt from the shareholders, officers or directors. *See Inter-tel Tech., Inc.*, 360 S.W.3d at 155. There is no mention in any cases beyond these two early decisions of consolidating the business entity and its insiders as a result.

Traditional veil piercing in Kentucky requires a finding that the corporation committed the wrongdoing before allowing the injured party to recover for that harm from the shareholders, officers, or directors. If Kentucky were to adopt a reverse veil piercing theory, it is reasonable to conclude that Kentucky would treat the doctrine as an equitable remedy that requires wrongdoing by a corporation's shareholders, officers, or directors before considering whether justice requires piercing the veil to allow the injured party to recover from the corporation's assets. There is no indication that Kentucky would go one step further and treat the business entity and its insiders as one in the same.

### iv.   The Cases Relied on by the Trustee are Inconsistent with Kentucky Law and the Bankruptcy Code.

The Trustee cites cases from three other jurisdictions that have allowed a bankruptcy trustee to use reverse veil piercing to avoid a fraudulent transfer and urges a similar result here. *See, e.g., Rodriguez v. Four Dominion Drive, LLC (In re Boyd)*, No. 11-51797, 2012 Bankr. LEXIS 4968 (Bankr. W.D. Tex. Oct. 22, 2012); *Searcy v. Knight (In re American Int'l Refinery)*, 402 B.R. 728 (Bankr. W.D. La. 2008); *Hovis v. United Screen Printers, Inc. (In re Elkay Indus., Inc.)*, 167 B.R. 404 (D.S.C. 1994). These cases are unpersuasive and distinguishable.

In *Boyd*, the court looked to several Fifth Circuit cases construing Texas law and concluded that reverse veil piercing is an accepted common law doctrine in Texas that allows a trustee, using an alter ego theory, to "exercise control over the assets of the non-debtor entity, and to administer those assets for distribution to creditors of the bankruptcy estate." *Boyd*, 2012

10

Bankr. LEXIS at *14 (*citing In re Bass*, 2011 Bankr. LEXIS 555, 2011 WL 722384, at *6 (Bankr. W.D. Tex. 2011)).  Similarly, the *American Int'l Refinery* court looked to Nevada law, which accepts reverse veil piercing based on an alter ego doctrine. *American Int'l Refinery*, 402 B.R. at 743-744.  The *American Int'l Refinery* court noted that "Nevada's alter ego doctrine does not merely shift liability from one entity to another, but expands the debtor's estate to include the property of its alter ego." *Id. at* 744.  Both courts relied on state law that expressly treated veil piercing as more than just a remedy.

The approach in *Elkay Indus.* is different.  The court in *Elkay Indus.* allowed the reverse veil piercing doctrine despite no guidance from the South Carolina state courts. *Elkay Indus.*, 167 B.R. at 411.  *See also Smith v. Richels (In re Richels)*, 163 B.R. 760, 763-764 (Bankr. E.D. Va. 1994) (recognizing reverse veil piercing as a cognizable legal theory despite no reported cases applying Virginia state law in support).  The Trustee argues the Bankruptcy Court should do the same and use its "broad equity powers" to acknowledge the doctrine so the Trustee's case can proceed to discovery. *See* Trustee's Response [Doc. 11] at 6-9.

As the prior discussion points out, however, Kentucky law cannot support this change.  In addition, bankruptcy courts cannot create substantive rights that are otherwise unavailable under applicable law:

> While the bankruptcy courts have fashioned relief under section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code.  That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.

*United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986); *see also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000) (same).

B. **The Trustee May Seek to Amend the Complaint**.

Kentucky law does not recognize reverse veil piercing as a means of consolidation of owners and their company to allow pursuit of federal and state fraudulent transfer claims. This would justify a decision for the Defendant on its motion for judgment on the pleadings, but the Trustee suggests there is another way to get to the same result. During oral argument on the Defendant's Motion, the Trustee sought leave to add a count to the Complaint addressing substantive consolidation. The Trustee also indicated she would add Meadow Lake as a party and possibly the Debtors as well.

Pursuant to FED. R. BANKR. P. 7015(a)(2), a party may amend its pleading with the Bankruptcy Court's consent and the Bankruptcy Court "should freely give leave when justice so requires." Justice does not require a court grant leave to amend a pleading if to do so would be futile. *Shapiro v. Harajli* (*In re Harajli*), 469 B.R. 274, 286 (Bankr. E.D. Mich. 2012). Further, a court should not grant leave to amend if it would result in prejudice to the other party. *Id.* at 285.

The Defendant opposes the relief requested, arguing it is prejudicial and it has not had adequate time to respond to the request. This argument is justified. Therefore, the Trustee is entitled to memorialize the request to amend the Complaint and the Defendant will have an opportunity to oppose such relief.

IV. **CONCLUSION**

Based on the foregoing, the Trustee may not proceed on a reverse veil piercing theory. But it is premature to grant judgment on the pleadings pending a decision on the Trustee's request for leave to amend. Thus, the Trustee shall have 14 days to move to amend the Complaint and the Defendant will have 14 days to object. If no objection to a motion to amend

the Complaint is filed, the motion to amend shall be granted and the motion for judgment on the pleadings overruled. If an objection is filed, the motion for judgment on the pleadings and request for leave to amend will be submitted. A separate order will set out the relief required by this Memorandum Opinion.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Friday, August 22, 2014
(grs)